18588

INDUSTRIAL VENDORS, INC., Respondent, v. Sam BURTS, James A. Calhoun, Jr., Walter W. Lewis, Otis W. Livingston and Robert C. Wasson, constituting the South Carolina Tax Commission, Appellants.

(151 S. E. (2d) 867)

*Messrs. Daniel R. McLeod, Attorney General,* and *Joseph C. Coleman* and *Joseph L. Allen, Jr., Assistant Attorneys General,* of Columbia, *for Appellants,*

*Messrs. Yancey A. McLeod* and *McLeod & Singletary,* of Columbia, for *Respondent*

December 13, 1966.

BRAILSFORD, Justice.

This action by Industrial Vendors, Inc., against the South Carolina Tax Commission to recover sales taxes assessed against Industrial for the period January 1, 1963, through March 31, 1964, and paid under protest, resulted in a judgment for the taxpayer and the Commission has appealed.

Industrial is a wholly owned subsidiary of Shanks Distributing Company, Inc., and is engaged exclusively in the business of vending through automatic machines items of merchandise which sell at retail for not more than ten cents. Shanks, a wholly owned subsidiary of Wometco Enterprises, Inc., a Florida holding company, is also a vending machine operator dealing in items which sell at retail for more than ten cents. As a ten cents and under vending company, Industrial, ordinarily, is not liable for the South Carolina sales tax because sub-section 22 of Section 65-1404, Code of 1962, exempts therefrom the following:

"The gross proceeds of the sale from vending machines when sold by the owner of such machines, provided the said owner is engaged exclusively in the business of selling from vending machines at a selling price not in excess of ten cents per sale."

Shanks does not qualify for this exemption and the proceeds of its ordinary operations are subject to the sales tax. The Tax Commission assessed the tax against Industrial's entire operation for the period in question on the ground that during this period it lost its exemption by engaging in other business activities than the sale from vending machines of items selling at a price not in excess of ten cents. It alleges in its answer that such business activities consisted of "wholesale sales for resale to the United States Navy Exchange and the rental of vending machines to the United States Navy Exchange, all in Charleston County." The issue on appeal is whether the circuit court's contrary conclusion is sustained by the evidence.

Industrial has no employees and owns no property except vending machines and merchandise. Its business is operated for it by Shanks under a written contract, referred to as a service agreement. The contract recites that Industrial is engaged exclusively in the business of selling through vending machines items retailing for not more than ten cents, and this is the business which Shanks is authorized to conduct for Industrial. By the terms of the contract, Industrial agrees to furnish the machines and merchandise, to pay for parts needed in making repairs, and to pay rent for space in Shanks' warehouses. Shanks agrees to operate Industrial's business and pay all other expenses for a commission of 32% on gross sales. The contract expressly provides that there shall be no commingling of funds, "that separate books and records shall be strictly maintained, and that proper cost accounting methods between the parties will be followed to that end."

The sole reason for Industrial's existence is to qualify for sales tax exemption on the ten cents and under phase of

the vending machine business for the benefit of the stock-holders of the holding company. The contract between Industrial and Shanks was submitted to and approved by the Tax Commission, which recognizes the legality and effectiveness of Industrial's existence for the above stated purpose.

The controversy arises out of the handling of vending machine operations at United States Naval Station, Charleston, South Carolina, under a contract between United States Navy Exchange and Shanks. This was a "reverse type" contract which, at the insistence of the Exchange, contained a provision that merchandise became the property of the Exchange when placed in the machines. This was implemented by a periodic exchange of checks whereby Shanks paid to the Exchange an amount equivalent to the gross take from the machines and the Exchange, after deducting a percentage referred to as its commission, returned the balance to Shanks. Otherwise, the vending machine operations were carried out on the Naval Station in exactly the same manner as at other locations. By its express terms, the contract between the Exchange and Shanks was non-assignable by the latter.

This type contract appears to be in general use at military installations. The theory is that when the merchandise is placed in the machines, a sale to the governmental agency for resale is effected, and that the retail sales from the machines are made by the governmental agency. Hence, no South Carolina sales tax is incurred. The Tax Commission concedes that sales under this type contract are tax exempt.

The automatic vending machine business at the Naval Station had formerly been operated by Carolina Vending Company. As of January 1, 1963, by contract with this company, Shanks took over its machines and inventories. The Shanks employee who set up this operation lost sight of the nature of the contract between Shanks and the Exchange, which contemplated that the entire tax-free operation should be by Shanks, and acquired the ten cents and under machines and inventories for Industrial. During the period

in question, these machines were kept filled with merchandise from Industrial's inventories· and the coins taken from the machines were deposited to Industrial's account, from which a commission was paid to Shanks under the service. contract. Industrial did not participate in any phase of the transaction between Shanks and the Exchange. It simply furnished the machines and merchandise to Shanks, received the coins collected from the machines and paid Shanks' commission.

In March, 1964, when Industrial's status as a tax exempt ten cents and under vendor was questioned because of the Naval Station operation, after notice to the Sales Tax Director, the records of Industrial and Shanks were reversed through appropriate auditing procedures, with compensatory adjustments and payments, so as to place the two corporations in the same situation, as between themselves, that they would have occupied if Industrial had never been involved in that operation.

The circuit court found that Industrial's involvement in· Naval Station business was the result of error and inadvertence, which has been· completely and equitably corrected with no loss or gain to either company or to the State. No exception has been taken to this finding. The court concluded that this involvement did not amount to Industrial's engaging in business other than that of selling ten cents and under items from vending machines. Hence, it was not disqualified for the statutory exemption from sales tax.

This conclusion, with which we agree, is decisive of the issue on appeal. The statute extends the exemption to one "engaged exclusively in the business of selling from vending machines at a selling price not in excess of ten cents per sale." Industrial had no employees and engaged in no business activity except through Shanks under the terms of the service contract. This contract authorized Shanks to conduct only one business for Industrial, vending through machines items costing ten cents or less. Industrial was not a party to the non-assignable contract between Shanks and the

Exchange. The "reverse" provision of that contract could not have the effect of vesting title to Industrial's merchandise in the Exchange. Industrial made no wholesale sales to the Exchange, either in fact or by operation of the contract between Shanks and the Exchange, and received no payment for merchandise or for machine rental from the Exchange. Industrial's only income from the Naval Station operation was the take in coins from its machines. It neither furnished nor received anything that was not a normal incident of the operation of its ordinary business under the service contract. We find nothing in the evidence to sustain the defense that Industrial lost its statutory exemption from the sales tax for the period in question by engaging in other business activity than the sale from vending machines of items at ten cents or under.

We are fortified in our conclusion by the conviction that it avoids a harsh result without doing violence to the terms of the statute as heretofore administered by the Tax Commission, which, by specific regulation, authorizes the type arrangement which exists between Shanks and Industrial. During the period in question, Industrial had gross sales of $1,400,000.00, of which sales at the Naval Station accounted for only $83,000.00. Under the action taken by the Tax Commission, tax exempt sales amounting to approximately 5% of Industrial's total sales have resulted in the imposition of the sales tax on the remaining 95% of sales which, otherwise, would have been exempt. The record indicates that the tax thus assessed amounted to more than twice the net profits of both Industrial and Shanks during the period in question, which is an indication that the statutory exception granted to vendors of Industrial's class was based on sound reason.

Affirmed.

Moss, C. J., Lewis and Bussey, JJ., and Lionel K. Legge, Acting J., concur.